**WEST VIRGINIA ELECTRIC SUPPLY COMPANY, Appellant,**

v.

**OHIO RIVER PLAZA ASSOCIATES LIMITED, et al., Appellees.**

[Cite as *West Virginia Elec. Supply Co. v. Ohio River Plaza Assoc., Ltd.* (1992), 82 Ohio App.3d 605.]

Court of Appeals of Ohio,
Gallia County.

No. 92CA7.

Decided Sept. 25, 1992.

*Schottenstein, Zox & Dunn* and *Todd R. Marti,* for appellant.

*Honohan, Harwood, Chernett & Wasserman, Michael T. Honohan, Mary L. Nummela* and *William D. Conley,* for appellees.

---

HARSHA, Judge.

West Virginia Electric Supply Co., plaintiff-appellant, appeals from a summary judgment entered by the Gallia County Court of Common Pleas finding that its mechanic's lien was invalid and, accordingly, that its claims for relief against Ohio River Plaza Associates, Ltd. ("ORPA"), Robert A. Darden Co. ("Darden"), and St. Paul Mercury Insurance Co. ("St. Paul"), defendants-appellees, were without merit.

Appellant assigns the following as its sole assignment of error:

"The trial court erred in holding that former Ohio Revised Code Section 1311.04 required a materialman to provide certificates or affidavits as a condition precedent to obtaining a valid mechanics' lien."

In 1988, ORPA entered into a contract with Darden to act as general contractor to design and construct the Ohio River Plaza in Gallipolis, Ohio.[1] The project was to consist of a Big Bear grocery store, several other stores, and various site improvements. Darden entered into a subcontract with Clark Electric Co. ("Clark"), a West Virginia corporation, in which Clark agreed to furnish the labor, material, and insurance required to complete all of the electrical work for the Big Bear grocery store. Appellant furnished materials to Clark for the project. St. Paul, the bonding company for Darden, acted as a surety on the mechanic's lien bond filed for appellant's protection.

At the time that construction was substantially completed, Darden had paid Clark the vast majority of the contract price. However, Clark never paid appellant for materials supplied by appellant for the project. Accordingly, appellant filed an affidavit and an amended affidavit of mechanic's lien with

---

1. Am.Sub.H.B. No. 238 was enacted effective April 10, 1991. 143 Ohio Laws, Part III, 3676. The provisions of that law which govern mechanic's liens are applicable only to projects in which the construction contract was executed on or after January 1, 1992. In keeping with one of the bill's primary purposes of minimizing the need to file liens by adopting more streamlined procedures to bring valid claims to the attention of owners and original contractors, the new law amends R.C. 1311.04 and 1311.05 to require materialmen (as well as original contractors and subcontractors) to serve a "Notice of Furnishing" upon the owner or original contractor within twenty-one days of providing the materials. Service of the notice is a mandatory condition precedent to assertion of lien rights on all private projects except home construction contracts, as defined by statute, and oil and gas projects. The mechanic's lien statutes existing prior to January 1, 1992 will continue to control projects contracted for prior to that date even if they continue past January 1, 1992. Accordingly, Ohio will have two sets of mechanic's lien statutes for several years. We deal with the provisions of the earlier statute here in light of the date of the contract. The difference between the two statutory schemes is significant.

the Gallia County Recorder's Office, noting a claim in the ultimate amount of $65,204.98.

Appellant filed a complaint seeking to enforce its mechanic's lien against ORPA, Darden, St. Paul, and to obtain a money judgment against Clark for the materials supplied. ORPA, Darden, and St. Paul filed a joint answer which asserted, in part, that appellant had failed to perfect its mechanic's lien in accordance with Ohio law. These defendants also filed a cross-claim for indemnification against Clark. On August 5, 1991, the trial court entered a default judgment in favor of appellant and ORPA, Darden, and St. Paul against Clark in the amount of $61,096.22 ($65,204.98 minus credits due Clark). The trial court additionally granted leave to the remaining defendants to file a motion for summary judgment on the issue of whether appellant properly perfected its mechanic's lien. The parties stipulated that the only issue as to the validity of appellant's mechanic's lien would be whether the lien was properly perfected. Upon the filing of the motion, the trial court granted summary judgment to appellees, finding that the applicable version of R.C. 1311.04 required materialmen such as appellant to provide a certificate or affidavit to the contractor showing the unpaid balance owed for materials furnished by appellant at the construction site. Since it was uncontested that appellant did not provide any certificate or affidavit, the court found that appellant's mechanic's lien was invalid.

Appellant's sole assignment of error asserts that the trial court erred in holding that the applicable version of R.C. 1311.04 required a materialman to provide certificates or affidavits to the contractor as a condition precedent to obtaining a valid mechanic's lien. We agree.

The portion of the applicable version of R.C. 1311.04 that is controlling in the case at bar provides:

"Whenever any payment of money becomes due from the owner, part owner, or lessee, or whenever the original contractor desires to draw any money from the owner, part owner, or lessee, under their contract, or whenever any mortgagee makes a written demand, the contractor shall make out and give to the owner, part owner, lessee, or mortgagee, or his agent, a statement under oath, showing the name and address of every laborer in his employ who has not been paid in full and also showing the name and address of every subcontractor in his employ, and of every person furnishing machinery, material, or fuel, and giving the amount which is due or to become due to them, or any of them, for work done, or machinery, material, or fuel furnished to him, which statement shall be accompanied by a certificate signed by every person furnishing machinery, material, or fuel to him. Address, as used in

this section and in section 1311.06 of the Revised Code, means last known address. * * *

" * * *

"The original contractor shall also deliver to the owner, part owner, lessee, or mortgagee similar sworn statements from each subcontractor, accompanied by like certificates from every person furnishing machinery, material, or fuel to the subcontractor. The owner, part owner, lessee, or his agent shall retain out of any money then due or to become due to the principal contractor, an amount sufficient to pay all demands that are due or to become due to the subcontractors, laborers, and materialmen, as shown by the contractors' and subcontractors' statements and the certificates of materialmen for work done or machinery, material, or fuel furnished, and shall pay said money to them according to their respective rights. All payments so made shall, as between such owner, part owner, lessee, or mortgagee, and the contractor, subcontractors, and persons performing labor or furnishing machinery, material, or fuel, be considered the same as if paid to the original contractor, and such owner, part owner, lessee, or mortgagee shall thereupon be released of any further liability to the extent of the payments so made.

*"Until the statements are made and furnished in the manner and form provided for in this section, the contractor has no right of action or lien against the owner, part owner, or lessee, on account of such contract, and the subcontractor has no right of action or lien against the owner, part owner, lessee, or contractor, until he has furnished such statements*, and any payments made by the owner, part owner, or lessee, before such statements are made or without retaining sufficient money, if that amount is due or it is to become due, to pay the subcontractors, laborers, or materialmen, as shown by the statements and certificates, are illegal and made in violation of the rights of the persons intended to be benefited by sections 1311.01 to 1311.24 of the Revised Code, and the rights of the subcontractors, laborers, and materialmen to a lien, are not affected thereby. When the appropriate period within which any liens can be filed has expired, and no liens on account of the improvement exist, then the failure of the contractor to furnish the affidavit as provided in this section shall not act as a bar or defense in any suit or cause of action to collect any claim. If the owner, part owner, lessee, or his agent cannot be found within the county, then it is not necessary for the contractor or subcontractor to make and deliver the statements and certificates as a prerequisite to a lien or to the institution of a suit or proceedings." (Emphasis added.)

In the instant case, it was uncontroverted that appellant acted neither as a contractor nor subcontractor in connection with the construction project, but

rather solely as a materialman to subcontractor Clark pursuant to R.C. 1311.01(B). See, *e.g., Monitor–Rentenbach v. Bethlehem Steel Corp.* (May 6, 1992), Hamilton App. Nos. C–910353 and C–910379, unreported, 1992 WL 98015. The trial court held that the language of the applicable version of R.C. 1311.04 requires materialmen such as appellant to provide the specified statements, and that failure to do so precluded the perfection of a mechanic's lien. Accordingly, the disposition of this appeal is dependent upon the statutory construction of the applicable version of R.C. 1311.04, a purely legal question which we address independently of the trial court's determination.

In construing a statute, a court's paramount concern is the legislative intent in enacting the statute. *State v. S.R.* (1992), 63 Ohio St.3d 590, 594, 589 N.E.2d 1319, 1322. Under Ohio law, it is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent. *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 218, 574 N.E.2d 457, 461. In interpreting a statute, the words must be taken in their usual, normal or customary meaning. *State v. S.R., supra,* 63 Ohio St.3d at 595, 589 N.E.2d at 1323; *John Ken Alzheimer's Ctr. v. Ohio Cert. of Need Review Bd.* (1989), 65 Ohio App.3d 134, 138, 583 N.E.2d 337, 339. The mechanic's lien statutes are remedial legislation designed to protect the laborers whose work, goods, and skill create the structures to which the liens attach; the statutes are to be liberally construed to effectuate this remedial purpose once a mechanic's lien is established. *Fairfield Ready Mix v. Walnut Hills Assoc., Ltd.* (1988), 60 Ohio App.3d 1, 2, 572 N.E.2d 114, 115. However, the procedural steps necessary to create a mechanic's lien must be strictly satisfied, since the statutes are in derogation of the common law. *Id.* See, also, *Reliance Universal, Inc. v. Deluth Constr. Co.* (1981), 67 Ohio St.2d 56, 21 O.O.3d 36, 425 N.E.2d 404.

A review of the explicit language of the applicable version of R.C. 1311.04 indicates that a failure to provide to the owner the statements specified precludes only contractors and subcontractors from raising a claim for relief based upon a mechanic's lien. Nowhere in the applicable version of R.C. 1311.04 is there a similar preclusion against materialmen who fail to provide to the contractor the specified certificates concerning their furnishing of material.[2] Courts do not have authority to ignore the plain and unambiguous language of a statute under the guise of statutory interpretation, but, rather, in such situations the courts must give effect to the words used.

---

2. It would appear that only upon demand by the contractor or subcontractor does a materialman have any duty to provide a certificate. There is no express sanction provided by the statute for failure of the materialman to comply with this request.

*Wray v. Wymer* (1991), 77 Ohio App.3d 122, 601 N.E.2d 503; see, also, *Ohio Dental Hygienists Assn. v. Ohio State Dental Bd.* (1986), 21 Ohio St.3d 21, 23, 21 OBR 282, 284, 487 N.E.2d 301, 303. In other words, courts may not delete words used or insert words not used. *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 97, 573 N.E.2d 77, 80. Furthermore, it is a basic doctrine of construction that the express enumeration of specific classes of persons in a statute implies that the legislature intended to exclude all others. *Indep. Ins. Agents of Ohio, Inc. v. Fabe* (1992), 63 Ohio St.3d 310, 314, 587 N.E.2d 814, 817, citing *Fort Hamilton–Hughes Mem. Hosp. Ctr. v. Southard* (1984), 12 Ohio St.3d 263, 265, 12 OBR 342, 343, 466 N.E.2d 903, 905. In that the interpretation of the applicable version of R.C. 1311.04 adopted by the trial court would insert words not contained in the statute, it erred in holding that appellant's failure to provide a statement or certificate pursuant to the applicable version of R.C. 1311.04 precluded it from perfecting a valid mechanic's lien on the subject property.

The trial court was persuaded to hold that appellees were entitled to summary judgment on this issue because it found the cases of *M.J. Kelly Co. v. Haendiges* (1979), 58 Ohio St.2d 505, 12 O.O.3d 409, 391 N.E.2d 723, and *Clifton Concrete, Inc. v. Tibaldi* (Mar. 17, 1988), Cuyahoga App. No. 52600, unreported, 1988 WL 32106, to be persuasive authority. In *Kelly, supra,* 58 Ohio St.2d at 506, 12 O.O.3d at 409–410, 391 N.E.2d at 724, the Ohio Supreme Court noted that the narrow issue before the court was "whether a subcontractor is required to file the affidavit of subcontractor referred to in R.C. 1311.04 with either the general contractor or the property owner as a prerequisite to obtaining a mechanic's lien." However, it noted in obiter dictum at 506, 12 O.O.3d at 410, 391 N.E.2d at 724, that the applicable version of R.C. 1311.04 "must be complied with before a contractor, subcontractor, *materialman or laborer* can sue or obtain a lien for money due him." (Emphasis added.) Nevertheless, as noted by appellant on appeal, this dicta could not have been intended to overrule the court's previous holding in *Matzinger v. Harvard Lumber Co.* (1926), 115 Ohio St. 555, 155 N.E. 131, where the court held at paragraph two of the syllabus that the nearly identical statutory predecessor to the applicable version of R.C. 1311.04, G.C. 8312, requiring notice to be served upon the owner of a structure constructed under a contract, applied to contractors and subcontractors, but not to materialmen. It is axiomatic that the syllabus of an opinion issued by the Ohio Supreme Court states the law of the case, and all lower courts in this state, including our own, are bound to adhere to the principles set forth therein. *Smith v. Klem* (1983), 6 Ohio St.3d 16, 18, 6 OBR 13, 15, 450 N.E.2d 1171, 1173; *State v. Decker* (Sept. 4, 1990), Highland App. No. 725, unreported, at 7, 1990 WL 127070. Considering the fact that the statement in *Kelly* was unnecessary to

the narrow issue presented in that case for review, that the statement was further unsupported by the manifest language of the applicable version of R.C. 1311.04, and that it could not have been intended to overrule the holding in *Matzinger*, we reject appellees' reliance on *Kelly* as "persuasive authority" in the case *sub judice*.

A panel of the Eighth District Court of Appeals in *Clifton*, in a two-to-one decision, relied on the dicta contained in *Kelly* to hold that the provisions of the applicable version of R.C. 1311.04 apply equally to contractors, subcontractors, and materialmen and that a materialman's failure to comply with the applicable version of R.C. 1311.04's formal requirements precluded its obtaining a valid mechanic's lien. However, as aptly noted by appellant, the holding in *Clifton* has been rejected, either explicitly, *Blanchester Lumber & Supply, Inc. v. White* (1989), 61 Ohio Misc.2d 466, 580 N.E.2d 81, or implicitly, *Holmesbrook, Inc. v. Lazar* (Jan. 16, 1991), Summit App. No. 14715, unreported, 1991 WL 6136, and *Queen City Lumber Co. v. Crosley* (Sept. 23, 1981), Warren App. No. 389, unreported, 1981 WL 5211, by other Ohio courts. A materialman is not precluded from perfecting a mechanic's lien by failing to file certificates or affidavits with the contractor under the version of R.C. 1311.04 applicable to this case. *Holmesbrook, supra; Queen City, supra.*[3]

▇▇ Appellees raise the additional argument that there is "no obvious policy reason" why a distinction should be made between materialmen and subcontractors pursuant to the applicable version of R.C. 1311.04. However, reviewing courts are not in the position to second-guess the policy decisions made by the General Assembly. See, *e.g., State v. Smorgala* (1990), 50 Ohio St.3d 222, 553 N.E.2d 672. Additionally, as mentioned in appellant's reply brief, citing Leach, Currie & Decker, Ohio Construction Law and Mechanic's Liens (1990) 227–228, unlike a contractor or a subcontractor, there are no legally acknowledged statutory lien rights behind or below the material supplier that have to be taken into consideration pursuant to the doctrine of superiority.

▇▇ The correctness of rendering a summary judgment depends on a tripartite demonstration by the movant that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, said party being entitled to have the evidence construed most strongly in his favor. See *Trout v. Parker* (1991), 72 Ohio App.3d 720, 722, 595 N.E.2d 1015, 1016, citing *Harless v. Willis Day Warehousing Co.*

---

**3.** In fairness to the trial court, it should be emphasized that appellant's trial counsel failed to cite the cases now relied upon by its appellate counsel during the proceedings below.

(1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. Because the trial court erred in determining that as a matter of law, appellant's failure to file certificates or statements pursuant to the applicable version of R.C. 1311.04 precluded it from perfecting a valid mechanic's lien, we reverse and remand for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

STEPHENSON, P.J., and PETER B. ABELE, J., concur.